H. J. BLESSING, Appellee, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**CARRIERS:** Negligence—Insufficient Icing—Evidence to Support.
1   The evidence on a charge of negligence in failing to properly ice a car of perishable freight from Muscatine to Kansas City reviewed, and *held* to sustain a charge of negligence.

**CARRIERS:** Delay—Shipment by Particular Train—Ordinary Time
2   —Negligence. The fact that the carrier, under its contract, was not bound to ship by any particular train did not release it from the obligation to ship with reasonable promptness. The record in the instant case and the fact that the time consumed by the shipment was double the ordinary time *held* to afford sufficient support for the finding of negligent delay.

**WITNESSES:** Cross-Examination—Matters Germane to Direct Examination.
3   amination. It is entirely fit and proper to bring out on cross-examination testimony germane to the direct examination when such testimony would have been admitted as competent and material had the cross-examiner called the witness as his own.

*Appeal from Muscatine District Court.*—HON. A. P. BARKER, Judge.

TUESDAY, JANUARY 19, 1915.

ACTION at law to recover damages for ·injury to a shipment of goods while in the possession of defendant as a com-

mon carrier. Verdict and judgment for plaintiff and defendant appeals.—*Affirmed.*

*F. W. Sargent, Pepper & Stafford,* and *J. H. Johnson,* for appellant.

*J. F. Devitt,* for appellee.

WEAVER, J.—The plaintiff is producer and shipper of vegetables at Muscatine, Iowa. In his petition he avers that on October 2, 1911, he delivered to defendant, a common

1. CARRIERS : negligence : insufficient icing : evidence to support.

carrier, a carload of vegetables for transportation to Kansas City, Missouri; that the defendant was advised by him of the perishable character of the shipment and undertook to keep the same properly iced and to deliver it at its destination with reasonable dispatch, but in violation of its duty defendant failed to keep said car properly iced and did not deliver it at Kansas City within a reasonable time and by reason thereof the goods so shipped were injured to plaintiff's damage in the sum of $617.10, for which he demands a recovery. In answer the defendant denies any neglect or failure on its part in icing or transporting the car. In a second count defendant further answers that plaintiff delivered the car loaded and with locked doors and defendant had no knowledge of its contents except as stated by the plaintiff, and that the shipment was accepted under a written contract by which it was not to be bound to transport the same by any particular train or in time for any particular market, and that under said contract the car was in fact kept under proper refrigeration and delivered within reasonable time at Kansas City. In a third count the foregoing allegations were repeated and it is further alleged that by the terms of the written contract for shipment, plaintiff agreed that all claims for loss or damage of the kind asserted in this action must be made in writing to the carrier within four months after the delivery of the property, and if not so presented defendant should not

be held liable thereon. It is further alleged that defendant delivered the car at Kansas City on October 5, 1911, and plaintiff did not file any claim in writing or in any other manner for his alleged damages until April, 1912, and that his right of action thereon is therefore barred.

Upon these issues there was a trial to jury which returned a verdict for plaintiff for $429.18. Defendant's motion for new trial was denied and from judgment on the verdict it appeals.

I. A special interrogatory whether the car had been properly iced by the defendant was submitted to the jury at defendant's request and answered in the negative. It is now argued that this special finding is without any support in the evidence and shows such bias or prejudice on the part of the jury that a new trial should be granted.

It is very doubtful, to say the least, whether a party having procured the submission of an interrogatory to a jury and being disappointed in the answer returned can be heard to say there was no evidence on which to base the finding. But passing that point we are clearly of the opinion that the record does disclose testimony on which the special finding may be sustained. Plaintiff's testimony tends to show that upon opening the car after its arrival at Kansas City the vegetables appeared to have been heated and thereby materially injured. According to his showing the car was delivered at the switch or loading track for his use on the morning of October 1, 1911, and the loading finished by him about noon or very soon thereafter on October 2nd. He further swears that he billed the car out not later than 2:30 P. M. of that day and it is admitted that defendant had a train leaving Muscatine for Kansas City at 5:57 P. M., on which a car of such freight, if ready, might have been taken. It is true the defendant's witnesses testify the car was not billed until 5:55 P. M., too late for the train mentioned, and it was sent out on the next train leaving Muscatine at 10:13 P. M. of the same day, but the issue thus raised was manifestly one for the jury. The last mentioned

train reached Eldon at 10:10 A. M. of October 3rd where plaintiff's car was set out. The car was there re-iced and remained in the Eldon yard until the next train leaving for Kansas City at 9:05 P. M. of October 3rd and arriving at Trenton, Missouri, at 8:35 A. M. of October 4th. Leaving the last named station at 10:05 A. M. of the same day it reached Kansas City at 8:05 P. M. and at 7:00 A. M. of the following day, October 5th, it was placed at the team track in the railway yards where it could be unloaded. When opened up at the team track defendant's witnesses say the refrigerator was still two-thirds full of ice. It appears, however, that after placing the car in position to be loaded on October 1st until sometime during the day or evening after it arrived in Eldon on October 3rd the car was not re-iced. At the lowest calculation there were at least four or five hours after the car was billed and before it left Muscatine. According to plaintiff's testimony the time was more than seven hours, and either case would seem to have afforded a fair opportunity for re-icing but this was not done until the car reached Eldon where it required 5,000 pounds to fill the refrigerator. Defendant's agent at Muscatine was a witness on the trial and being asked by defendant why the opportunity was not improved to ice the car there said, "I am not prepared to say. I don't know the condition of the ice. I rather think our ice was rather low. I don't believe we had any on hand." The testimony of the agent at Eldon that he filled the refrigerator to its full capacity and the fact that on arriving at Kansas City there was still a fair supply of ice tends fairly to show that the car was reasonably well refrigerated over that portion of its course, but it is by no means clear that such was the case during the period prior to the icing at Eldon. On the contrary we think the record is sufficient to sustain a finding that the shipment from Muscatine to Eldon was not "under full ice" as the contract required. If iced at all at Muscatine it must have been before the car was placed on the loading track for plaintiff's use on the morning of October 1st and it was

not re-iced until sometime between the arrival at Eldon at 10:10 A. M. of October 3rd and the departure therefrom at 9:05 P. M. of that day. The failure so to do has a very natural explanation in the fact stated by the agent that the company's supply of ice at Muscatine was low or exhausted. There was no error in the trial court's refusal to grant a new trial because of the special finding.

II. There was also sufficient evidence to take to the jury the issue upon plaintiff's claim of unreasonable delay in transporting the car to Kansas City.   The evidence tends to

2. CARRIERS: de-
lay: shipment
by particular
train: ordi-
nary time:
negligence.

show that under ordinary conditions a shipment of this kind from Muscatine ought to reach its destination in twenty-four hours. If, therefore, plaintiff is to be believed, the car was delivered to the defendant company for transportation in time for the 5:57 train on the afternoon of October 2nd, and it ought to have arrived in Kansas City not later than the train due there at 8:05 P. M. of October 3rd, but it did not in fact arrive until twenty-four hours later. It may be conceded that defendant did not contract to take the car by any particular train but it was still bound to act in the premises with reasonable promptness, and whether it did so act was a question of fact for the jury.

III. As already stated, the defendant pleads that it had a written contract with plaintiff by which all claims for damages to the shipment must be filed with defendant's agent at the place of shipment or at place of destination within four months, and that the claim in suit was not in fact presented until long after that period had expired. The alleged contract is not embodied in the answer or in the brief but the answer pleads it by reference to "Exhibit B." The exhibit thus designated appears to be a freight bill and the alleged agreement is not found therein. But assuming that there was a contract of that kind there was evidence tending to show that the claim was presented within less than four months from

the time of shipment and the question was fairly submitted to the jury.

IV. Error is assigned upon the ruling of the trial court permitting the cross-examination of the defendant's agent at Muscatine, in the course of which was made the statement before referred to, that the defendant was out of ice or that the supply was low at Muscatine at the time the car was waiting in the yards for the train to which it was to be attached.

3. WITNESSES: cross-examination: matters germane to direct examination.

We are inclined to the view that the cross-examination was not unduly extended. The witness had been examined in chief concerning the time when the car was billed out and the reasons why it could not have been sent out with the earlier train, and among other things said, "If the car going on that train had to be re-iced at Eldon it would be necessary to delay the train there or to hold the car over to the next train." On cross-examination he was asked, "There was no reason why that car could not have been fully iced here as long as you had that delay, and rushed on through to Kansas City?" It was to this question the witness answered as we have already quoted. It appears to be entirely germane to the direct testimony. Moreover, neither the question nor answer is shown to have been objected to and no exception was saved. In any event the matter thus elicited was competent and material testimony which would have been admitted had plaintiff made him a witness in his own behalf, and we should be very slow to reverse the judgment and order a new trial for no better reason than that such facts were drawn out on a cross-examination of the witness when testifying for defendant.

Other questions suggested in the assignment of error have not been argued. No sufficient reason appearing for granting a new trial the judgment of the district court is—*Affirmed.*

LADD, PRESTON and EVANS, JJ., concur.